UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-132-KSF
(CONSOLIDATED WITH 10-212-KSF)

BRAKE PARTS, INC.                                                           PLAINTIFF

v.                                       **OPINION & ORDER**

DAVID LEWIS, SATISFIED BRAKE
PARTS, INC. and ROBERT KAHAN                              DEFENDANTS

\* \* \* \* \* \* \* \* \*

Currently before the Court is the motion [DE #71] of the defendants, Satisfied Brake Parts, Inc. ("Satisfied") and Robert Kahan, to dismiss BPI's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to stay this action pending the outcome of a separate action filed by BPI against Satisfied which is currently pending in Canada. This motion is fully briefed and is ripe for review.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

BPI, a Delaware corporation with its principal place of business in McHenry, Illinois, is a leading manufacturer of brake products, including brake pads. Satisfied, a Canadian corporation that distributes its products throughout the United States, competes with BPI in the market for brake pads. This lawsuit stems from BPI's allegation that Satisfied and Kahan, Satisfied's executive vice president, illegally procured BPI's confidential formulae, mechanisms, and processes for brake pad manufacturing through a clandestine arrangement with one of BPI's employees, David Lewis.

BPI first filed a civil action against David Lewis on April 15, 2009 in this Court (the "Lewis action"). BPI's Complaint against Lewis includes the following allegations. During the course of his employment at BPI, Lewis worked on the development and improvement of ceramic (non-ferrous) brake pads for passenger vehicles, creating various iterations of disc-pad friction formulations. Because he was entrusted with BPI's confidential and proprietary information, including technical data, formulae, logbooks for previous generations of brake pads, bill of materials, test results performed on BPI brake parts, margins, vendor costs, identity of vendors, pricing strategies, product information, new product development, and product road maps, Lewis was required to enter into an Invention and Disclosure Agreement which prohibited him from disclosing any trade secrets and required him to use information developed in his job only for the benefit of BPI.

In January 2008, Lewis was terminated from BPI. After his termination, BPI alleges that Lewis began consulting with various companies and provided proprietary information to at least one direct competitor of BPI in violation of his Invention and Disclosure Agreement, as well as common and statutory law. As a result, BPI asserts claims against Lewis for breach of contract and actual and threatened misappropriation of trade secrets and confidential information in violation of the Kentucky Uniform Trade Secrets Act ("KUTSA"), KRS § 365.880 *et seq*.

After a hearing on May 28, 2009, the Court entered its Temporary Restraining Order [DE #36] and set this matter for a hearing on BPI's motion for preliminary injunction. Thereafter, on June 22, 2009, the Court was advised that settlement negotiations were ongoing. At the parties' request, the Court entered its Order cancelling the hearing on the motion for preliminary injunction and ordered that the Temporary Restraining Order remain in effect until further order of the court

[DE #47]. On September 16, 2009, the parties entered their joint Notice of Stipulation of Dismissal [DE #53], and this matter was dismissed by the Court [DE #54]. Upon BPI's motion to reopen the litigation for an alleged violation of the settlement agreement [DE #56], this case was reopened and a Scheduling Order was entered [DE #66]. Although the case was set for a jury trial on February 8, 2011, the Scheduling Order in the Lewis matter has been set aside as a result of consolidation with another action filed by BPI as explained below.

BPI filed a second, related action in Canada (the "Canada action"), naming Satisfied as a defendant. There, BPI claims that Satisfied has wrongfully acquired BPI's allegedly confidential business information from Lewis. The Canada action, filed in August 2009, remains pending, and discovery in that action continues.

The third action (the "Satisfied action") was filed by BPI in the United States District Court for the Northern District of Illinois in December 2009 against Satisfied and Kahan. In this action BPI alleges that Lewis, during the course of his employment at BPI, maintained a relationship with Satisfied without BPI's knowledge. Through this relationship, Kahan exploited the knowledge and confidential information that Lewis acquired while working for BPI. Specifically, Kahan created an email account for Lewis that could not be traced to Lewis, and he sent emails to that account requesting that Lewis provide suggested formulations, processes, and techniques for Satisfied to use in manufacturing brake pads. In at least two emails sent to Kahan, Lewis revealed confidential formulations and processes that he was developing for BPI. To compensate Lewis for this information, Kahan traveled to the United States and met Lewis in an airport hotel in Kentucky, where he paid Lewis at least $8,000 in hundred-dollar bills. BPI claims, upon information and belief, that Satisfied has since used (and continues to use) the confidential and proprietary

3

information provided by Lewis to manufacture and improve upon its own line of brake pads.

BPI's Complaint against Satisfied and Kahan asserts claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq* as well as claims based on Illinois statutory and common law. BPI's motion for preliminary injunction filed in this action is currently set for a hearing on September 7, 2010 [DE #72].

Upon BPI's motion and without objection from the defendants, the Satisfied action was subsequently transferred to this Court on June 23, 2010 for the convenience of the parties and in the interest of justice pursuant to 28 U.S.C. § 1404(a). On August 17, 2010, the Court granted BPI's motion to consolidate the Lewis action and the Satisfied action, and they are now going forward as Consolidated Civil Action No. 09-132-KSF [DE # 70]. Although the parties have engaged in discovery in the Lewis action, no Scheduling Order has been entered in the Satisfied action. Only limited discovery, pursuant to an Order by Magistrate Judge Wier, has been allowed.

Currently before the Court is Satisfied and Kahan's motion to dismiss, or in the alternative, to stay this action [DE #71]. The defendants move the Court to dismiss BPI's Complaint for several reasons. First, the defendants argue that BPI's RICO claim should be dismissed because BPI fails to state with particularity its claim that the defendants engaged in a "pattern" of racketeering activity. Second, the defendants argue that BPI's claims based on the Illinois Trade Secrets Act should be dismissed because BPI's claims arise out of the defendants' alleged contact with Lewis in Kentucky. Finally, the defendants argue that BPI's claim for tortious interference with an existing contract is preempted by the KUTSA. Alternatively, the defendants move the Court to stay this action under principles of international comity to allow the Canada action to conclude before proceeding. The Court will first address whether or not to stay this action.

## II. SATISFIED AND KAHAN'S MOTION TO STAY PURSUANT TO INTERNATIONAL COMITY

Satisfied and Kahan move the Court to stay this action under principles of international comity. According to the defendants, because BPI's claims in the Canada Action are nearly identical to the claims in this action and because the Canada action has proceeded ahead with discovery, the Court should stay this action to avoid piecemeal litigation and the potential for inconsistent results. On the other hand, BPI contends that the federal courts have an obligation to exercise concurrent jurisdiction under the circumstances.

It is well settled that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). This obligation should be avoided in only a few "extraordinary and narrow" circumstances. *Id*. In cases where related litigation is pending both in the United States and the courts of a foreign sovereign "parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one [jurisdiction] which can be pled as res judicata in the other." *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992)(citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984). When deciding whether to refuse to exercise their own jurisdiction in favor of permitting another sovereign to exercise its own jurisdiction over a parallel proceeding, courts consider the following factors:

    (1)    whether the state court has assumed jurisdiction over any res or property;

    (2)    whether the federal forum is less convenient to the parties;

    (3)    avoidance of piecemeal litigation;

>  (4)   the order in which jurisdiction was obtained;
>
>  (5)   whether the source of governing law is state or federal;
>
>  (6)   the adequacy of the state court action to protect the federal plaintiff's rights;
>
>  (7)   the relative progress of the state and federal proceedings; and
>
>  (8)   the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206-07 (6th Cir. 2001); *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir .1998). While the factors are typically applied in situations where the parallel proceeding is in a state court, they have also been applied in the same manner when a federal court proceeding is parallel to a court proceeding in a foreign country. *See Finova Capital Corp. v. Ryan Helicopters USA, Inc.*, 180 F.3d 896, 898 (7th Cir. 1999); *Grammar, Inc. v. Custom Foam Systems, Ltd*, 482 F.Supp.2d 853, 857 (E.D.Mich. 2007). The eight factors are not to be applied mechanically, but rather, should be carefully balanced in light of the circumstances of the case, "with the balance weighted heavily in favor of the exercise of jurisdiction." *Paine Webber, Inc.*, 276 F.3d at 206-7; *Moses H. Cone Mem'l Hosp.v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). None of these factors are determinative. *Colorado River*, 424 U.S. at 818-19.

The threshold issue, however, is whether the two actions are parallel. *Romine*, 160 F.3d at 340-41. In the Sixth Circuit, "exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Id.* at 340 (internal citations omitted). Here, the Canada action and this consolidated action are parallel proceedings. In both cases, the parties are sufficiently similar. Although Kahan is not a defendant in the Canada action, he is an officer and shareholder of Satisfied and thus has substantially similar interests to those of Satisfied. Furthermore, the issues in both cases significantly overlap. BPI initiated the Canada action on August 25, 2009, claiming that

6

Satisfied had wrongly acquired BPI's allegedly confidential business information from Lewis. BPI's first actions in that case included filing a motion for injunction asking for the same relief that BPI is now asking from this Court. Both cases require a determination of whether BPI's confidential information and/or trade secrets were misappropriated. While BPI argues that the Canada action relates only to the events occurring after Lewis' departure from BPI in January 2008 while the Satisfied action is concerned with the defendants' actions beginning in September 2006, these distinctions are insufficient to find that the cases are not parallel.

Inasmuch as the proceedings are "substantially similar," and thus parallel, the Court now must evaluate the factors to determine whether abstention or a stay is appropriate. The first factor requires the Court to consider whether there is any property of which the court might take possession. Because there is no property at issue, this factor supports the exercise of jurisdiction. However, this factor alone is not sufficient. The second factor requires the Court to consider whether the federal forum is less convenient to the parties. While Canada is a convenient forum for BPI, who actually chose the forum, and Satisfied and Kahan, it may not be for Lewis, a resident of Kentucky. This factor, thus, does not tip the scale to either side.

The third factor, whether abstention aids in the avoidance of piecemeal litigation, supports declining jurisdiction, as there is a certainty of piecemeal litigation occurring if this Court exercises jurisdiction. The parties have undertaken extensive discovery in the Canada action, and allowing both actions to proceed could result in duplicative efforts and expense. The fourth factor also supports declining jurisdiction because while the Canada action was filed August 25, 2009, this action was not filed until December 23, 2009, almost four months later. To the extent that BPI asserts a claim against Satisfied and Kahan for RICO violations, the fifth factor - the source of the

governing law - supports exercising jurisdiction because there is a federal claim at issue. The sixth factor requires the Court to consider whether the Canada action will protect BPI's federal rights. If BPI's RICO claim survives the defendants' motion to dismiss, it is unclear whether BPI would be adequately protected in the Canada action; thus, this factor tends to favor exercising jurisdiction. The seventh factor, the relative progress of the two action, supports declining jurisdiction because the Canada action has proceeded well beyond the initial stage. The parties have undertaken extensive discovery. The eighth factor is a wash, because both courts have concurrent jurisdiction.

Based on this analysis, three factors support exercising jurisdiction and three factors support abstention. Two factors are a wash. Because the presumption is that this Court exercise its jurisdiction, the factors that are a wash between the parties effectively act to support this Court's exercise of jurisdiction. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. Upon balancing the above factors, there are simply no exceptional circumstances which would justify an abstention in this matter. Although the defendants request a stay rather than a complete abstention, the Court sees no reason to stay the progress of this litigation. Accordingly, the defendants' motion to stay will be denied.

### III.    SATISFIED AND KAHAN'S MOTION TO DISMISS

The defendants move the Court to dismiss BPI's complaint against them for several reasons. First, the defendants argue that BPI's RICO claim should be dismissed because BPI fails to state with particularity its claim that the defendants engaged in a "pattern" of racketeering activity. Second, the defendants argue that BPI's claims based on the Illinois Trade Secrets Act should be dismissed because BPI's claims arise out of the defendants' alleged contact with Lewis in Kentucky. Finally, the defendants argue that BPI's claim for tortious interference with an existing contract fails to state

a claim and is preempted by KUTSA.

### A. MOTION TO DISMISS STANDARD

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 555(citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). In ruling upon a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir .2005).

A district court may not grant a Rule 12(b)(6) motion because it does not believe the complaint's factual allegations. *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995). However, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B. RICO

In Count I of its Complaint against Satisfied and Kahan, BPI alleges that the defendants violated RICO, specifically 18 U.S.C. § 1962(c), by engaging in a pattern of racketeering activity involving wire fraud and transportation of stolen property. Specifically, BPI contends that each email transmission between Lewis, in Kentucky, and Satisfied and Kahan, in Canada, seeking and

providing BPI's confidential and proprietary information constitutes a separate violation of 18 U.S.C. § 1343, which prohibits the use of wire in interstate or foreign commerce to further any scheme or artifice to defraud. BPI also contends that Satisfied and Kahan then paid at least $8,000 for BPI's confidential and proprietary information which was transmitted from Lewis' home in Kentucky to Satisfied and Kahan in Canada, in violation of 18 U.S.C. § 2315.

In order to succeed on its RICO claim, BPI must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C.§ 1962(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The defendants argue that BPI cannot establish a "pattern of racketeering activity." To establish a pattern of racketeering activity, BPI must show that the defendants engaged in "at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)(quoting 18 U.S.C. § 1961(5)). "Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).

BPI's RICO claim is based on the predicate acts of wire fraud and transportation of stolen property, both eligible predicate offenses under § 1961(1). Wire fraud requires a showing of a scheme to defraud using an interstate electronic wire communication in furtherance of the scheme. *U.S. v. Lalonde*, 509 F.3d. 750, 762 (6th Cir. 2007)(citing 18 U.S.C.§ 1343). Because no one was deceived as a result of the emails between Satisfied and Lewis and because the emails do not contain any false statements or material misrepresentations, the defendants argue that BPI has failed to allege a predicate act based on wire fraud.

While BPI is correct that a RICO claim predicated on mail fraud need not show first-party reliance as an element of the claim, the Supreme Court has held that deception or reliance by

10

someone is a necessary element of a scheme to defraud. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 128 S.Ct. 2131, 2144 (2008)(holding that wire fraud requires conduct calculated by the defendant to deceive someone). So while it is not necessary to plead that Satisfied relied on some misrepresentation, BPI must allege that "*someone* relied on the defendant's misrepresentations." *Id*. at 2144. Because BPI has not plead any allegations or omissions or material misrepresentations made by Satisfied or Kahan to deceive anyone and on which someone relied, there is no predicate act of wire fraud. Even if BPI's claim of transportation of stolen property counts as one predicate act, BPI has failed to plead the two predicate acts necessary to establish a pattern of racketeering activity.

Additionally, a pattern of racketeering activity also requires BPI to show that the predicate racketeering acts "are related" and that they "amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The relationship between the acts may be shown by "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240 (citations omitted). Here, BPI's Complaint satisfies this requirement: the predicate acts had the same participants, Lewis and Satisfied, similar purposes, to obtain BPI's confidential and proprietary information and to compensate Lewis for this information, and involved the same method of commission in wire fraud. As alleged, the predicate acts are clearly related.

In addition to "relatedness," the predicate acts pleaded must also have sufficient "continuity." Whether BPI's complaint satisfies this requirement is a much closer question. The "continuity" requirement can be established through either a "closed period of repeated conduct," known as

11

"closed-ended continuity," or through "past conduct that by its nature projects into the future with a threat of repetition," known as "open-ended continuity." *H.J. Inc.*, 492 U.S. 241. BPI contends that it satisfies the continuity requirement under the open-ended concept of continuity.

In order to survive a motion to dismiss on a RICO claim based on open-ended continuity, BPI must plead facts which suggest the threat of continued racketeering activities projecting into the future. According to the Supreme Court, open-ended continuity can be pleaded through facts showing "a distinct threat of long-term racketeering activity," or by showing that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J., Inc.*, 492 U.S. at 242. Here, BPI argues that open-ended continuity exists based on its allegation that "Satisfied has since used, and continues to use, the confidential and proprietary BPI information provided by Lewis to manufacture and improve upon its own line of brake pads."[DE #1, ¶63]. Because the defendants will continue to use its confidential and proprietary information, BPI argues that open-ended continuity exists.

The Court disagrees. The "key element in the 'continuity' test is the element of *repetition of the past racketeering acts* in the future." *Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F.Supp. 447, 460 (E.D.Mich. 1994)(emphasis in original). Here BPI does not allege that any further predicate acts may occur, but rather that the defendants will use the confidential and proprietary information already in their possession to improve their own brake pads. When faced with similar facts, other courts have used the following analogy:

> When a thief steals $100, the law does not hold him to a new theft each time he spends one of those dollars. The same is true of the [proprietary information] . . . Its subsequent and varied uses of the stolen [information] would not constitute new offenses but would go only to the issue of damages.

*Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48 (7th Cir. 1989); *see also Estes v. Worley,* 2006 WL 2644964 (E.D.Ky September 14, 2006); *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 670, 679 (E.D.Ky 1996). As further explained by the district court in *Bro-Tech Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378, 405 (E.D.Pa. 2009),

> Causes of action for misappropriation of trade secrets or unfair competition, among others, may allow Plaintiffs a remedy for any unfair business use of the allegedly misappropriated information at issue here, but such use, occurring after the conclusion of the fraudulent scheme and employing its proceeds, does not itself amount to or threaten future criminal activity.

Once the defendants allegedly stole BPI's trade secrets, the scheme ended. Thus, BPI's Complaint does not satisfy the continuity requirement for a pattern of racketeering activity. Accordingly, the defendants' motion to dismiss Count I of BPI's complaint against Satisfied and Kahan will be granted.

### C.     BPI'S CLAIMS BASED ON ILLINOIS LAW

In Count II of its Complaint, BPI alleges that the defendants "have actually misappropriated and/or threatened to misappropriate BPI's trade secrets without BPI's consent in violation of the Illinois Trade Secrets Act, 765 ILCS § 1065 *et seq*." [DE #1, ¶ 83]. The defendants argue that because the alleged actions of the defendants of which BPI complains occurred in Kentucky and Canada, the Illinois Trade Secrets Act does not apply to this case. On the other hand, BPI argues that because the case was transferred from Illinois to Kentucky pursuant to 28 U.S.C.§ 1404(a), the law of the transferor court (Illinois) applies.

In *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964), the United States Supreme Court held that

> where the defendants seek transfer, the transferee district court must be obligated to

>apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.

See also *Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 616 (6th Cir. 1998)("The transferee court must apply the law of the state where the suit was originally filed. . . ."); *In re Bendectin Litigation*, 857 F.2d 290, 305 (6th Cir. 1998)("[W]hen a plaintiff files suit in a federal court with proper venue, and the defendant transfers it to a new federal court for convenience, the transferor's state law (including its conflicts law) applies."); *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980)("Once a plaintiff has exercised his choice of forum by selecting a permissible forum, the state law of that forum should govern the action, regardless of the wisdom of the plaintiff's selection. Thus, no matter who seeks to transfer the action to a more convenient forum under § 1404(a), the state law of the forum in which the action was originally commenced remains controlling."); *Carr v. American Universal Ins. Co.*, 341 F.2d 220, 224 (6th Cir. 1965)(A transferred case "must be treated as if it were being tried in the transferor state").

Thus, BPI is entitled to proceed based upon the law of the transferor court and the relief available to them in that court. This Court, then, must look to Illinois' choice of law rules to determine whether Kentucky or Illinois law applies to this action. In this case, Illinois, the state of the transferor court, follows the "most significant relationship test" in determining the applicable choice of law. *Safeco Ins. Co. v. Jelen*, 886 N.E.2d 555, 558 (Ill.Ct.App. 2008); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir. 1993). Although BPI's principal place of business may be in Illinois, the alleged actions of which BPI complains occurred in Kentucky and Canada. BPI alleges in the Lewis case that Lewis is domiciled in Kentucky and was employed by BPI at its Winchester, Kentucky facility from at least 1998 through 2008. Further BPI alleges in the

Lewis case that this Court has jurisdiction over Lewis and venue is proper in this district "because Lewis breached duties owed to BPI in this District, committed tortious acts in this District, performed contracts substantially connected to this District, traveled to this District, resides in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District." Moreover, in its Complaint against Satisfied and Kahan, BPI alleges that "Kahan traveled to the United States and made a payment of cash to Lewis at an airport hotel in Kentucky." The payment was "for BPI's confidential proprietary information which was transmitted from Lewis' home in Kentucky to Satisfied and Kahan in Canada." Given that BPI's claims in both cases arise out of Satisfied and Kahan's alleged conduct with Lewis, Kentucky has the most significant relationship to this action and Illinois therefore would apply Kentucky law.

Here, Count II of BPI's Complaint against Satisfied and Kahan asserts a claim for violation of the Illinois Trade Secrets Act, 765 ILCS § 1065 *et seq*. Although BPI has indicated that its claim is likely to proceed under KUTSA, it has not amended its Complaint to assert that claim. Thus, the Court will grant the defendants' motion to dismiss Count II of BPI's complaint based on Illinois law, but will allow BPI leave to file an amended complaint to assert its claim for actual and threatened misappropriation of trade secrets under KUTSA.

      **D.**      **TORTIOUS INTERFERENCE WITH CONTRACT**

In Count III, BPI alleges that the defendants, with full knowledge of Lewis' contractual relationship with BPI, caused Lewis to breach his contractual obligations by funneling BPI's confidential and proprietary information to Satisfied and Kahan [DE #1]. The defendants argue that this claim for tortious interference with contract fails to state a claim.

A claim for tortious interference with contract under Kentucky law requires: (1) the existence

15

of a contract; (2) defendant's knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages; and (6) defendant had no privilege or justification to excuse its conduct." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 WL 980732, *1, (E.D.Ky. March 7, 2006). BPI's Complaint alleges that Lewis was a party to a contract, the Invention and Disclosure Agreement, which required him not to disclose certain confidential and proprietary information belonging to BPI. BPI's Complaint further alleges that despite Satisfied and Kahan's full knowledge of this contractual relationship, the defendants used Lewis to exploit his knowledge and gain access to BPI's confidential information. Specifically, BPI's Complaint alleges that the defendants created an email account for Lewis to facilitate his breach of contract, and that using that email account, Kahan requested that Lewis provide certain formulations, processes, and techniques for Satisfied to use in manufacturing brake pads. Then BPI's Complaint alleges that Lewis breached the contract by sending at least five letters to Kahan, on the email account, which contained confidential information and processes which he was developing contemporaneously for BPI. As a result, BPI's Complaint alleges that it was damaged, and that the defendants' interference with the contract was willful and intentional and was accomplished by improper motive and through improper means. Thus, BPI's Complaint contains allegations meeting all of the requirements to proceed on a claim for tortious interference with contract under Kentucky law.

     The defendants also argue that BPI's claim for tortious interference with contract is preempted by KUTSA, which "replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." KRS § 365.892(1); *see Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 789 (W.D.Ky. 2001). Thus, claims

of tortious interference with contract are generally preempted to the extent that they are based upon the misappropriation of trade secrets. However, KUTSA does not preempt all causes of action that have to do with trade secrets, and if misappropriation is simply one element of a claim, then the cause of action is not necessarily preempted. *Id*. at 789. Thus, the Court must examine BPI's tortious interference claim and "determine whether the claim seeks a remedy for the misappropriation of trade secrets, which the KUTSA would preempt. *Greif, Inc. v. MacDonald*, 2007 WL 679040 *1 (W.D.Ky March 1, 2007).

As set out above, BPI's tortious interference claim is based upon the allegation that the defendants induced Lewis to violate the Invention and Disclosure Agreement and then disclose the confidential and proprietary information. It is thus based on interference with a contract, and is not necessarily based upon misappropriation of a trade secret. Preventing third parties like Satisfied and Kahan from inducing the breach of a confidentiality agreement does not conflict with trade secret law. Moreover, to succeed on this claim, BPI does not have to prove that the formulations allegedly provided to the defendants were trade secrets. Accordingly, the defendants' motion to dismiss Count III will be denied.

## IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)   the defendants' motion to stay [DE #71] is **DENIED**; and

(2)   the defendants' motion to dismiss [DE #71] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (a)   the defendants' motion to dismiss Count I of BPI's Complaint against Satisfied and Kahan is **GRANTED,** and BPI's RICO claim is **DISMISSED**;

17

(b)     the defendants' motion to dismiss Count II of BPI's Complaint against Satisfied and Kahan is **GRANTED**, and BPI's claims based on Illinois law are **DISMISSED;**

(c)     **WITHIN FIFTEEN DAYS OF ENTRY OF THIS OPINION & ORDER** BPI may file an amended complaint asserting a claim for actual and threatened misappropriation of trade secrets under KUTSA; and

(d)     the defendants' motion to dismiss Count III of BPI's Complaint against Satisfied and Kahan is **DENIED**, and BPI's claim for tortious interference with contract **REMAINS PENDING** against Satisfied and Kahan.

This August 31, 2010.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge